AO 91 (Rev. 08/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
Northern District of Oklahoma

*FILED*

*JUN 02 2020*

*Mark C. McCartt, Clerk*
*U.S. DISTRICT COURT*

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No. 20·MJ· 140· FHM |
| | ) | |
| **BENJAMIN HAYFORD** | ) | **FILED UNDER SEAL** |
| | ) | |
| *Defendant(s)* | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___on or around April 2020 to May 2020___ in the county of ___Tulsa___ in the

Northern District of Oklahoma, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1343 | Wire Fraud; |
| 18 U.S.C. § 1344(2) | Bank Fraud; |
| 18 U.S.C. § 1014 | False Statements to a Financial Institution; and |
| 15 U.S.C. § 645(a) | False Statements to the Small Business Administration |

This criminal complaint is based on these facts:

See Attached Affidavit by

☑ Continued on the attached sheet.

_____
*Complainant's signature*

**Special Agent Rodney Connor**
*Printed name and title*

~~Sworn to before me and signed in my presence.~~ *FHM*
*SWORN And Attested to bY teLePhone*

Date: **6-2-20**

_____
*Judge's signature*

City and state: _____Tulsa, OK_____    ___U.S.___ Magistrate *Judge*
*Printed name and title*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | **FILED UNDER SEAL** |
| v. | ) | |
| | ) | Criminal No. _____ |
| BENJAMIN HAYFORD, | ) | |
| | ) | |
| Defendant. | ) | |

### AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Rodney Connor, being duly sworn, hereby depose and state as follows:

### Introduction

1.      I am a Special Agent for the Federal Housing Finance Agency, Office of Inspector General, where I have been employed since 2012.  I am currently assigned to the Dallas Field Office.  My current duties include the investigation of financial crimes including wire and bank fraud, as well as other white-collar crimes.  For approximately eleven years, I served as a Special Agent for the Internal Revenue Service ("IRS"), Criminal Investigation Division.  Throughout the course of my career, I have conducted an array of investigations involving criminal tax, money laundering and bank fraud schemes, including abusive tax programs; investment frauds; income, and employment tax evasion; non-compliance with the Bank Secrecy Act; and many other illegal schemes impacting individuals, partnerships, corporations and financial institutions.  I have extensive experience conducting search, seizure and arrest warrant operations. I am authorized to investigate violations of the laws of the United States, and I am a law enforcement officer with the authority to execute warrants issued under the authority of the United States.

2.      Recently, I have been assigned to work with the U.S. Department of Justice and other law enforcement partners to investigate possible fraud associated with the stimulus and

1

economic assistance programs created by the federal government in response to the COVID-19 pandemic.

3.     This affidavit is made in support of a criminal complaint charging Benjamin Hayford with 18 U.S.C. § 1343 (Wire Fraud), 18 U.S.C. § 1344(2) (Bank Fraud), 18 U.S.C. § 1014 (False Statements to a Financial Institution), and 15 U.S.C. § 645(a) (False Statements to the Small Business Administration), committed by Benjamin Hayford.

4.     This affidavit is based on my personal investigation and investigation by others, including federal and local law enforcement officials whom I know to be reliable and trustworthy. The facts contained herein have been obtained by interviewing witnesses and examining documents obtained in the course of the investigation as well as through other means.   This affidavit does not include every fact known to me about this investigation, but rather only those facts sufficient to establish probable cause.

5.     This affidavit does not include each and every fact known to the government, but only those facts necessary to support a finding of probable cause to support the requested arrest warrant.

## **Probable Cause**

### *The Paycheck Protection Program*

6.     The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic.   One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through

a program referred to as the Paycheck Protection Program ("PPP"). In or around April 2020, Congress authorized over $300 billion in additional PPP funding.

7.  In order to obtain a PPP loan, a qualifying business must submit a PPP loan application, which is signed by an authorized representative of the business. The loan application is called an SBA Form 2483. The PPP loan application requires the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application, the small business (through its authorized representative) must state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures are used to calculate the amount of money the small business is eligible to receive under the PPP. In addition, businesses applying for a PPP loan must provide documentation showing their payroll expenses and that they were in business as of February 15, 2020.

8.  A PPP loan application must be processed by a participating financial institution (the lender). If a PPP loan application is approved, the participating financial institution funds the PPP loan using its own monies, which are 100% guaranteed by the Small Business Administration (SBA). Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, is transmitted by the lender to the SBA in the course of processing the loan.

9.  PPP loan proceeds must be used by the business on certain permissible expenses— payroll costs, interest on mortgages, rent, and utilities. The PPP allows the interest and principal on the PPP loan to be entirely forgiven if the business spends the loan proceeds on these expense items within a designated period of time (usually eight weeks of receiving the proceeds) and uses at least 75% of the PPP loan proceeds on payroll expenses.

***Benjamin Hayford and Global Policy & Strategy Partners LLP***

10.     Benjamin Hayford is a resident of Centerton, Arkansas who, since in or about May 2019, has been employed full time by a large retailer as a Senior Project Manager.

11.     Global Policy & Strategy Partners, LLP ("GPS Partners") is a general partnership that was registered with the Secretary of State for the State of Texas on or about April 1, 2020. The State of Texas registration document for GPS Partners listed Hayford as the signer and the partner with a majority interest.  This document identifies an apartment in Bryan, Texas (the "Bryan, Texas Address") as being the partnership's principal office in the State of Texas. According to databases used by law enforcement, the Bryan, Texas Address is a residential building that is occupied by LC, who is believed to be a cousin of Hayford.  Agents performed surveillance on the Bryan, Texas Address and took the photograph marked as Attachment A.  The Bryan, Texas Address appeared to the surveilling agents to be a private residence, not a commercial office space.  According to an Internal Revenue Service ("IRS") Form SS-4 / Notice CP 575 B that I reviewed, GPS Partners was assigned an Employee Identification Number ("EIN") on or about March 30, 2020.  An EIN is a unique identification number that the IRS assigns to businesses for tax reporting purposes.

***Benjamin Hayford's Application to Bank 1***

12.     Bank 1 is a federally-insured financial institution and a member of the Federal Home Loan Bank System based in Fayetteville, Arkansas.  As set forth below, based on a search of the contents of a Gmail account registered to Hayford (the "Hayford Gmail Account"), which I reviewed pursuant to a warrant issued by a United States Magistrate Judge in the District of

Columbia, I know that Hayford, on behalf of GPS Partners, applied to Bank 1 for a PPP loan and that he had email correspondence with representatives of Bank 1 about that loan.[1]

13.     On or about March 31, 2020, Hayford exchanged email correspondence with a representative of Bank 1 in which he asked for, and received, information about the requirements of the PPP.  In an email sent on or about April 1, 2020, Hayford advised a representative of Bank 1 that he intended to apply for a PPP loan for GPS Partners.  In this email, Hayford represented that his business operated as a sole proprietorship from May 2018 to December 2019 and that "[o]ur business structure change[d] and became a new entity effective 1 January 2020 (partnership agreement signed 25 December 2019)."

14.     On or about April 3, 2020, Hayford, on behalf of GPS Partners, sent to Bank 1 via email an application for a PPP loan together with what purported to be supporting payroll documentation.  In the body of the email, Hayford explained that the payroll documentation that he was providing identified employees by an internal employee number – not by name – because he was uncomfortable providing "private data" over email.  Hayford also wrote: "We currently employ 247 people, with 244.17 FTE [full time equivalent]. . . Since our employees are 1099-MISC, we do not withhold Federal income tax and they are responsible for paying this, as well as their own health insurance, et cetera.  The other partners and I are prioritizing our employees during this time and currently not receiving any income (e.g., have waived our Q1 partner guaranteed payment)."[2]  Hayford attached numerous documents to this email including:

---

[1] All email correspondence from or to Hayford referenced herein occurred on the Hayford Gmail Account.

[2] The term "1099 employee" is derived from the IRS Form 1099-MISC, which taxpayers use to declare payments made to independent contractors.  The term "W-2 employee" is derived from the IRS Form W-2 which taxpayers use to declare payments made to employees.

a. First, an SBA Form 2483 which represented that GPS Partners had 244.17 employees and an average monthly payroll of $1,788,987.50. This application sought a loan in the amount of $4,472,468.75 (2.5 times average monthly payroll). The application identified the Bryan, Texas Address as GPS partners' primary address and the Hayford Gmail Account as the contact email address.

b. Second, a PDF file purporting to show GPS Partners' payroll for January and February 2020. The file identified employees only by an internal employee number – not by their names – and represented that the partnership paid $1,904,325 and $1,673,650 in wages in January 2020 and February 2020, respectively. This documentation reported that payments were made to 247 of 250 employees (Employee identification numbers 100000 through 100249).

c. Third, a letter dated January 31, 2020, signed by Hayford, representing that: "a total of $1,904,325 was distributed in cash payments to 247 1099-MISC contract employees for 44,370 hours."

d. Fourth, a letter dated February 28, 2020, signed by Hayford, representing that: "a total of $1,673,650 was distributed in cash payments to 247 1099-MISC contract employees for 39,050 hours."

e. Fifth, a Form 941, Employer's Quarterly Federal Tax Return[3], reporting that for the period January, February and March 2020, GPS Partners had 247 employees that received wages, tips or other compensation in the amount of $3,577,975, and that no federal income tax was withheld or social security or Medicare taxes were owed by GPS Partners. The Form 941 was unsigned but listed Hayford as the "Founding Partner."

---

[3] A Form 941 is used by employers to report federal income, social security, and Medicare taxes withheld from employee's paychecks and to pay the employer's portion of social security or Medicare tax.

15.     On or about April 3, 2020, Bank 1 sent Hayford an email notifying him that his PPP loan had been denied because his company was not located within the bank's service area. After Hayford emailed a representative of Bank 1 asking for more information about the denial of his loan, a representative of Bank 1 wrote Hayford an email which apprised him of the following: "I would also like to remind you that currently the SBA has opened this up for small businesses with W2 employees and sole proprietorships. . . If you are paying someone by 1099 you will NOT include them as they are considered an independent contractor. They can apply for themselves starting on the 10th."

16.     On or about April 10, 2020, Hayford sent an email to a representative of Bank 1 in which he opined that the SBA's decision to exclude from the calculation of eligible payroll costs payments made to 1099-MISC employees was inconsistent with the spirit of the CARES Act and asserted: "this means I will be having a call tomorrow with 247 workers to let them know we are not able to submit on their behalf and pay their payroll for 8 more weeks, and they will have to go-it-alone using net income calculations. That's 247 families we fought to help access this Paycheck Protection Program lifeline."

***Hayford's Application to Bank 2***

17.     Bank 2 is a federally-insured financial institution and a member of the Federal Home Loan Bank System headquartered in Tulsa, Oklahoma. On or about April 9, 2020, Bank 2 received an application (and underlying payroll documentation) for a PPP loan on behalf of GPS Partners, which Bank 2 provided to investigators. Bank 2's file for the GPS Partners PPP loan contained the following:

> a.   An SBA Form 2483 signed by Hayford and dated April 3, 2020, which represented that GPS Partners had 244.17 employees with an average monthly payroll of

7

$1,788,987.50. Accordingly, the application sought a loan in the amount of $4,472,468.75. The application identified the Bryan, Texas Apartment as GPS partners' address and listed the phone number XXX-XXX-7348 as the telephone point of contact.[4]

b. A copy of Hayford's State of Texas driver's license.

c. A PDF file purporting to show payroll documentation that is materially the same as the document that Hayford sent to Bank 1, as described in paragraph 14b above.

d. Documentation from the IRS establishing that GPS Partners received its EIN on March 30, 2020 as well as documentation from the State of Texas establishing that GPS Partners was registered on April 1, 2020.

e. A document purporting to be the "Partnership Agreement" that formed GPS Partners. This agreement represents that the partnership was formed on January 1, 2020 between Benjamin James Hayford, whose address is listed as the Bryan, Texas Address; LC, whose address is listed as the Bryan, Texas Address; and the Hayford Family Trust, the address of which is listed as a residence on Wyoming Street in Vancouver, Washington. The signature block identifies Benjamin James Hayford as the trustee of the Hayford Family Trust.

18. According to RB, a representative of Bank 2, Hayford's PPP loan was approved on or about April 11, 2020, but was not funded immediately. RB advised investigators that, on or about April 17, 2020, he reviewed the payroll documentation submitted with Hayford's application

---

[4] According to records provided by cellular carrier T-Mobile, the subscriber of this account is an individual with the last name of Hayford, who appears to be Benjamin Hayford's father. The subscriber address is the same Vancouver, Washington residence identified in the partnership agreement described in paragraph 17e below.

and concluded that it "looked strange." RB explained that, in his experience, business loan applicants typically provide payroll documentation that includes employee names and Federal Insurance Contributions Act ("FICA") withholdings. The payroll documentation that was submitted, on the other hand, did not include this information. RB also relayed that he became concerned after he reviewed an article that Hayford posted on LinkedIn, a professional social networking website, which criticized the SBA's administration of the PPP program. Investigators have preserved an image of the article. The author is identified as Benjamin J. Hayford and the profile picture of the LinkedIn poster appears to be the same person whose picture appears in the Benjamin Hayford driver's license that Bank 2 maintains in its loan file for the GPS PPP loan. The "about the author" section of the LinkedIn article describes Hayford as a "senior advisor and founding partner" of GPS Partners as well as his position with the retailer described above.

19.    On or about April 20, 2020, RB and another representative of Bank 2 placed a call to Hayford at the 7348 telephone number and recorded the conversation. RB placed the call from a Bank 2 office in Tulsa, Oklahoma. I listened to a recording of the conversation, during which Hayford communicated the following, in sum and substance:

        a. GPS originally operated as a sole proprietorship but in December 2019 re-organized into a partnership, which became effective on January 1, 2020.

        b. GPS Partners' clients realized between several hundred million dollars and up to a billion dollars in revenue per year.

        c. GPS partners has 247 "W-2 employees."

        d. The agreement establishing GPS Partners "was signed effective the first of January." Hayford relayed that, although GPS Partners was formed on January 1,

9

2020, it was not formally registered with the State of Texas until April of 2020 due to unspecified "difficulties" with the Secretary of State for the State of Texas.

e.   When asked to explain how GPS Partners paid wages to "W-2 employees" before receiving an EIN, Hayford explained that GPS Partners paid employees in cash, did not use banks, and did not use a payroll processor.  Hayford also asserted that GPS Partners' clients paid the partnership in cash to "protect confidentiality."

f.   Most of GPS Partners' employees reside in Texas and the partnership paid them by providing envelopes of cash.

20.   On or about April 20, 2020, Hayford sent an email to Bank 2 and attached an unsigned Form 941, Employer's Quarterly Federal Tax Return.  Similar to the Form 941 that Hayford submitted to Bank 1, the Form 941 submitted to Bank 2 reported that for the period of January, February, and March 2020, GPS Partners had 247 employees that received wages, tips or other compensation in the amount of $3,577,975.  However, unlike the Form 941 submitted to Bank 1 that reflected no federal income taxes had been withheld or social security or Medicare taxes were owed, it was reported to Bank 2 that $441,473.53 was due for the combined payroll related taxes.  The form submitted to Bank 2 was unsigned but listed Hayford as the "Sr Advisor & Founding Partner."  As noted previously in paragraphs 14 and 15, after Hayford had told Bank 1 that GPS Partners did not withhold federal income taxes for the 247 employees because they were 1099 contract employees responsible for paying their taxes, Bank 1 informed him that the SBA program is for small businesses with W2 employees and that 1099 contractors should not be included.  Because of this communication, your affiant believes that Hayford then reported to Bank 2 that $441,473.53 of payroll related taxes were due in an attempt to make it appear that GPS Partners was paying W-2 employees rather than 1099 contract employees.

10

21. On or about April 21, 2020, RB sent Hayford an email notifying him that Bank 2 had decided not to fund the loan. Hayford responded with an email stating: "if I understand correctly, although our partnership agreement was effective 1/1/2020 and although we meet every PPP eligibility factor, we were accepted by the SBA on 11 April, now, despite partnering with [Bank 2] since 9 April to provide every requested documentation, because we had delayed filing confirmation back from the TX Secretary of State and received a Federal EIN at the end of Q1 [first quarter of 2020], and because we do not use a third-party payroll provider, you are declining to fund our SBA approved loan?" RB responded: "[w]e are not declining to fund the loan because you do not use a third-party payroll provider – we are declining to fund the loan because you are unable to provide any documents validating your payroll expense. Your documentation appears to be an excel file completely devoid of typical W-2 information, such as calculations for federal income tax withholdings or payroll-related taxes, such as FICA...Per our conversation yesterday, you operate entirely out of cash and cannot provide any bank statements at all. The only additional form you provided is the 941, which has not been submitted to the IRS."

22. In an email sent on or about April 21, 2020 at 4:44 p.m.[5] Hayford wrote to RB: "I do not recall you asking for further payroll information yesterday. We only provided you the first three tabs of the attached in PDF form; here's the full Q1 [first quarter 2020] payroll file. Additionally, we also send an internal comm[unication] when payroll is disbursed; scanned copies of those letters for Jan and Feb are attached as well." Hayford attached three documents to the email.

    a. A letter signed by Hayford and purportedly dated January 31, 2020. The letter represented: "January payroll has been disbursed in full to all employees as of

---

[5] Times are listed in Eastern Daylight Time (EDT)

yesterday, Thursday, 30 January close of business. A total of $1,904,325.00 was distributed in cash payments to 247 1099-MISC contract employees for 44,370 hours." This letter is identical to the one that Hayford provided to Bank 1, as described in paragraph 14c above.

b. A letter signed by Hayford and purportedly dated February 28, 2020. The letter represented: "February payroll has been disbursed in full to all employees as of yesterday, Thursday, 27 February close of business. A total of $1,637,650.00 was distributed in cash payments to 247 1099-MISC contract employees for 39,050 hours." This letter is identical to the one that Hayford provided to Bank 1, as described in paragraph 14d above.

c. An Excel file entitled "GPS Partners 2020 Payroll JanFeb2020.xlsx."

23.    Although Hayford represented to Bank 1 that the employees for GPS Partners are 1099 contract employees who are responsible for paying all their taxes, the Excel file submitted to Bank 2, labeled "GPS Partners 2020 Payroll JanFeb2020.xlsx," purports to show GPS Partners' payroll expenditures and taxes withheld for their employees for January and February 2020. The file contains additional tabs labeled "January 2020 incl tax withhold" and "February 2020 incl tax withhold." The tabs contain fields identifying employee number (but not employee name) and wages paid, as well as deductions for expenditures such as health savings account, and retirement contributions. In addition, these two tabs contain a field identifying the purported employees' net (or "take home") pay. In my training and experience, the disbursements and deductions reflected in this document do not resemble the operations of a legitimate business. For example, the tab

purporting to summarize the February 2020 payroll contains over one hundred entries[6] for employees who received the following identical disbursements and deductions:

| Hours Worked | Wages Paid | HSA Election | Retirement (401k) | Social Security Withheld | Medicare Withheld | Net (Take-Home) |
|---|---|---|---|---|---|---|
| 160 | $7,200 | ($1,775.00) | ($4,875.00) | ($336.35) | ($75.95) | $137.70 |

The notion that employees earning wages of $7,200 per month would, after deductions, "take home" only $137.70 per month is, in my experience, highly implausible.  In my experience reviewing tax returns and return information, it is unusual to encounter a business in which dozens of employees contributed over half of their wages to a retirement plan while subsisting on less than $200 per month.  Moreover, the tab purporting to summarize the February 2020 payroll shows total withholdings of $1,112,010 for 401(k) contributions.  I know from listening to a recording of Hayford's April 20, 2020 telephone call with Bank 2 that Hayford claimed to handle payroll in cash; in my training and experience, I find it unusual that a legitimate 401(k) investment manager would accept and manage over $1 million in cash contributions.  Notwithstanding that it purports to track payroll from January and February of 2020, an examination of the metadata associated with this Excel file reveals that it was created on March 30, 2020.

24.   On April 21, 2020 at 5:05 p.m. – 21 minutes after sending RB the documents described in the preceding two paragraphs – Hayford sent RB an email with the same text as the one that he sent at 4:44 p.m. and to which was attached identically-named attachments. However, one word was altered in the purported payroll disbursement letters for January and February of 2020: Hayford substituted the phrase "W-2" for "1099-MISC."  Accordingly, the revised January

---

[6] The chart below is a non-exhaustive sample of the information contained in the Excel file.

2020 payroll letter that Hayford sent at 5:05 p.m. read: "January payroll has been disbursed in full to all employees as of yesterday, Thursday, 30 January close of business. A total of $1,904,325.00 was distributed in cash payments to 247 W-2 employees for 44,370 hours." (Emphasis added). Similarly, the February 2020 payroll letter represented: "[a] total of $1,673,650.00 was distributed in cash payments to 247 W-2 employees for 39,050 hours." (Emphasis added). Hayford's email at 5:05 noted "here are the corrected docs," but it did not specifically call RB's attention to the alteration from "1099-MISC" to "W-2" employees.

25.    The next day (April 22, 2020), RB sent Hayford an email addressing the discrepancy: "[t]he first set of letters note that your cash payments were made to 247 1099-MISC contract employees. Per the SBA's guidance, 1099 contractors need to apply for their own PPP loans, and GPS Partners cannot use those individuals in their payroll calculation. In your phone conversation on Monday, you represented to [Bank 2] that all of the employees on the payroll report were W-2 employees." That day, Hayford responded: "the first set of letters were a clerical error by my assistant. We have instructed our 1099-MISX [sic] to apply on their own and the 247 are W-2 employees. My apologies for any inconvenience."

26.    Hayward's assertion to Bank 2 that GPS Partners has 247 "W-2 employees" is completely inconsistent with the April 3, 2020 email that he sent to Bank 1 (recounted in paragraph 14, above), in which he asserted that GPS Partners "currently employ[s] 247 people" and that "since our employees are 1099-MISC, we do not withhold Federal income tax . . . ." (Emphasis added).

***Review of Texas Workforce Commission Documentation***

27.    Employers in the State of Texas are required to register with the Texas Workforce Commission and report to that agency the payment of unemployment insurance taxes on employees' wages.

28.    In or about May of 2020, a representative of the Texas Workforce Commission performed a wage detail inquiry which determined that neither Global Policy & Strategy Partners, LLC; the Benjamin J. Hayford Family Trust; nor Benjamin James Hayford were registered with the Texas Workforce Commission.  Accordingly, the Texas Workforce Commission has no record that Hayford or the other two entities paid wages to any employees.

29.    Investigators discovered in the Hayford Gmail Account an email that Hayford sent to the Texas Workforce Commission on or about March 31, 2020, which stated: "I am hoping to determine the appropriate unemployment tax rate I should pay this year for my small business.  I understand I should pay at least 2.7% on every first $9,000 paid to every employee. . . Can you help me understand if I should be allocating a higher portion than 2.7%?"  Notably, this email to the Texas Workforce Commission came *after* the dates on which Hayford claimed to have made payroll disbursements to the partnership's employees.

***Review of Hayford's Personal Income Tax Return***

30.    Investigators discovered in Hayford's email account his 2019 federal tax return together with a receipt from Intuit TurboTax memorializing that the returns were submitted to the IRS.

31.    Hayford's tax return included an IRS Form 1040 Schedule C, which reported $2,500 in gross income generated from a business identified as Global Policy & Strategy Partners.  In response to the question, "[d]id you make any payments in 2019 that would require you to file

15

Form(s) 1099?" Hayford answered "no." Hayford reported total business expenses of $24,925 in connection with this business. This sum is comprised of expenses for advertising ($224); vehicle expenses ($9,994); insurance ($386); legal and professional services ($980); office expenses ($584); office expenses ($584); supplies ($73); taxes and licenses ($26); travel ($7,110); meals ($2,476); utilities ($2,744); and other expenses ($328). Notably, the Schedule C does not list any expenses associated with wages.

32.     Based on my training and experience, it is difficult to understand how a business with the expenses described in Hayford's Schedule C could expand over the course of a single month (January 2020) to a partnership that paid $1,904,325 in monthly wages to 247 employees.

*Email Correspondence Regarding the Formation of GPS Partners*

33.     Although Hayford represented to Bank 1 and Bank 2 that GPS Partners LLP was established on January 1, 2020 and provided Bank 2 with a partnership agreement purporting to show that the business association was formed on that date, I reviewed correspondence from Hayford's email account indicating that the parties did not execute a partnership agreement until April 2020. This fact is significant not only because it tends to show that GPS Partners was created to take advantage of the PPP but also because Hayford initialed a certification appearing on the SBA Form 2483 submitted to Bank 2 which attested that: "the Applicant was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC."

a.     On or about April 10, 2020, Hayford sent LC an email to which was attached an unsigned copy of a partnership agreement for GPS Partners. In the body of the email, Hayford wrote: "any changes you see we need for this? If not, will you please sign, scan, and return to me at your earliest convenience?" The attached agreement, which purports to be "made as of this 01

16

day of January, 2020," is identical to the agreement that Hayford provided to Bank 2 and which Bank 2 maintained in its loan file.

      b.  On or about April 17, 2020, LC sent Hayford an email to which was attached an image of his signature.

### Conclusion

    34.   Based on my training and experience, and the information provided in this affidavit, I respectfully submit that there is probable cause to believe that beginning on a date unknown, but from at least in or around April 2020 to May 2020, within the Northern District of Oklahoma and elsewhere, Benjamin James Hayford committed violations of 18 U.S.C. § 1343 (Wire Fraud), 18 U.S.C. § 1344(2) (Bank Fraud), 18 U.S.C. § 1014 (False Statements to a Financial Institution), and 15 U.S.C. § 645(a) (False Statements to the Small Business Administration).

    I declare under penalty of perjury that the statements above are true and correct to the best of my knowledge and belief.

 

Special Agent Rodney Connor
Federal Housing Finance Agency
Office of Inspector General

Sworn to and subscribed before me this ____ day of June, 2020. *FHM*
SWORN AND Attested to by telephone 6-2-20

The Honorable Frank McCarthy
United States Magistrate Judge

